IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| SHAWN WHEELER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CV03-197-N-MHW |
| | ) | |
| vs. | ) | **MEMORANDUM DECISION** |
| | ) | **and ORDER** |
| CLINT MATTINGLEY, MIKE McDANIEL, DIANA MOORE, CATHERIN VALDEZ, and J. GIVENS, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Pending before the Court is Defendants' Renewed Motion for Summary Judgment (Docket No. 61). All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this case. *See* 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. Having fully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that the decisional process would not be significantly aided by oral

**ORDER 1**

argument. Therefore, in the interest of avoiding further delay, the Court shall decide this matter on the written motions, briefs, and record without oral argument. D. Idaho L. Civ. R. 7.1(b).

## I.

## RENEWED MOTION FOR SUMMARY JUDGMENT

**A.      Standard of Law Governing Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In a motion for summary judgment, the moving party bears the "initial burden of identifying for the court those portions of the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record which demonstrate that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party. To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there

**ORDER  2**

is a genuine issue for trial."  Fed. R. Civ. P. 56; *see T.W. Electric Serv., Inc.*, 809 F.2d at 630 (internal citation omitted).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 377 U.S. at 322.  The existence of a scintilla of evidence in support of the non-moving party's position is insufficient.  Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Anderson v. Liberty Lobby*, 477 U.S. at 252.

**B.     Standard of Law Governing Qualified Immunity**

The Ninth Circuit has recently clarified that, in the context of a summary judgment motion, the district court must follow the analytical framework of Rule 56 when defendants asserting qualified immunity have challenged the truth of the facts alleged in the Complaint:

> [I]f a defendant moving for summary judgment has produced enough evidence to require the plaintiff to go beyond his or her pleadings, the plaintiff must counter by producing evidence of his or her own. If in that circumstance the plaintiff fails to produce evidence, the district court is not required (or even allowed) to assume that the challenged factual allegations in the plaintiff's complaint are true. Similarly, if in that circumstance the plaintiff produces evidence that is not enough, by itself, to create a genuine issue of material fact, the district court is not required (or even allowed) to assume the truth of challenged allegations in the complaint in order to supplement that evidence. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970); *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). If discovery has been curtailed by the district court because the defendant has asserted official immunity from suit, the district court may to some extent relax the evidentiary standards for the plaintiff in

**ORDER  3**

> recognition of the restrictions on discovery, but the requirement that the plaintiff produce evidence nonetheless remains. *See DiMartini v. Ferrin*, 889 F.2d 922, 926-27 (9th Cir. 1989).

*Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 963 (9th Cir. 2004).

In § 1983 actions, the doctrine of qualified immunity protects state officials from personal liability for on-the-job conduct so long as the conduct is objectively reasonable and does not violate an inmate's clearly-established federal rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). Contrarily, a state official may be held personally liable in a § 1983 action if he knew or should have known that he was violating a plaintiff's clearly-established federal rights. *Id*. True to its dual purposes of protecting state actors who act in good faith and redressing clear wrongs caused by state actors, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

The threshold question prior to considering whether a qualified immunity defense should be applied is whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991). If no constitutional right would have been violated, the inquiry ends. *Id*.

If, viewing the alleged injuries in a light most favorable to the plaintiff, a constitutional right appears to have been violated, the Court proceeds to the next step, which is to inquire whether the right was clearly established. *Id*. To determine whether

**ORDER  4**

the right was clearly established, a court turns to Supreme Court and Ninth Circuit law existing at the time of the alleged act. *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996) (citation omitted). In the absence of binding precedent, the district courts should look to available decisions of other circuits and district courts to ascertain whether the law is clearly established. *Id.* (citation omitted).

"The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. at 194-95 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999). Summary dismissal or dismissal is appropriate where "the law did not put the [defendant] on notice that his conduct would be clearly unlawful." *Id.*, 533 U.S. at 195.

**C.     Background**

The Court earlier granted summary judgment on all of Plaintiff's claims except the following: that Defendants performed an illegal search and seizure regarding his van and its contents, and that Defendants attempted to cover up their civil rights violations. The Court earlier declined to address Plaintiff's loss of personal property claim, which he was pursuing in state court. The Court will now address all remaining claims.

**D.     Discussion of Remaining Claims**

    1.     <u>Illegal Search and Seizure Claim</u>

Plaintiff asserts that in the course of Officer Mattingley's and Officer Givens's investigation of the allegations against Plaintiff at Yoke's grocery store, Givens inspected

**ORDER  5**

the parked, unoccupied van allegedly driven by Plaintiff to the store.  Givens called Mattingley on the radio and told him the keys were in the ignition and the motor area was warm to the touch.  Plaintiff asserts that this information was used to interrogate him before the arrest.  Later, the officers decided to arrest Plaintiff.  The Court has already determined that probable cause for the arrest existed.

After Plaintiff's arrest, a computer check of the van showed that it was registered to Evergreen towing.  The registration tags on the van were expired.  It was determined that the van had been sold to Plaintiff, who had never registered it in his own name.  The van was impounded, inventoried, and searched.  The open can of beer, Plaintiff's address book, and other items were photographed and seized at that time.  At trial, Plaintiff and the State stipulated to suppression of the photographs and the items found in the car.[1]  *See* Copy of Transcript of Motion to Suppress Hearing, July 10, 2002.

To determine whether qualified immunity should be applied to protect Defendants' actions, the Court reviews Fourth Amendment law then available to Defendants.  To prevail on a Fourth Amendment claim, Plaintiff must show that the government's actions invaded his reasonable expectation of privacy.  *United States v. Knotts*, 460 U.S. 276 (1983).  A warrantless search is presumptively unreasonable and violates the Fourth Amendment.  *State v. Woolery*, 775 P.2d 1210, 1212 (Idaho 1989).  A police officer can

---

[1]The Court notes that it is not bound by the state-court stipulation of Plaintiff and the State of Idaho that the evidence obtained in the search and seizure should be suppressed, presumably because the search and seizure were unlawful.  Defendants were not parties to that action; no hearing was held, and no determination was made by the Court as to whether the search and seizure were unlawful.

**ORDER  6**

prevail against such a claim if he shows either (1) that the act "did not constitute a 'search'"; or (2) that it "fell within a recognized exception to the warrant requirement." *State v. Clark*, 859 P.2d 344, 347 (Idaho Ct. App. 1993). In *Clark*, the court explained the law applicable to a search without a seizure:

> If the officer intruded into an area where a private interest exists in order to gain [a] view, the intrusion must be justified by one of the recognized exceptions to the warrant requirement. However, a policeman's mere observation from a vantage point that does not infringe upon a privacy interest, of something open to public view, normally implicates no Fourth Amendment constraints because observation of items readily visible to the public is not a "search." The Fourth Amendment protects only places or activities in which the individual holds a reasonable expectation of privacy. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.
>
> * * *
>
> If [the officer's] vantage point was not within a constitutionally protected area, his observation using only his normal vision to see that which was open to public gaze was permissible under the open view doctrine.

*Id*. at 313.

In Plaintiff's case, the officers were investigating the victim's allegations. Givens is alleged to have peered into the window of the van. The van was in a parking lot open to the public. The information about the van was available to anyone who might have approached the van in the same manner. Accordingly, the open view doctrine applies, and no Fourth Amendment violation occurred from the act of looking into the van and touching its engine area in the course of the investigation. The Ninth Circuit has addressed a similar but slightly different issue – videotaping in places open to the public –

**ORDER 7**

and has determined that it does violate the Fourth Amendment:

> "Video surveillance does not in itself violate a reasonable expectation of privacy." *United States v. Taketa*, 923 F.2d 665, 677 (9th Cir. 1991). Indeed, "[v]ideotaping of suspects in public places, such as banks, does not violate the fourth amendment; the police may record what they normally may view with the naked eye." *Id*. We have not defined the precise contours of Fourth Amendment protection in the video context. However, in this case, given the public nature of the mailroom in a community hospital where individuals – even DEA agents – strolled nearby without impediment during the [drug] transaction, we conclude the defendant had no objectively reasonable expectation of privacy that would preclude video surveillance of activities already visible to the public.

*United States v. Gonzalez*, 328 F.3d 543 (9th Cir. 2003). Because this claim fails the threshold test of *Saucier*, the claim is subject to summary judgment.

The Court next considers whether, *after* Plaintiff's arrest, Defendants violated Plaintiff's Fourth Amendment rights by searching the van and photographing and seizing an opened can of beer and items related to Plaintiff's ownership of the van. Defendants would have had available to them the following Idaho Supreme Court explanation of the boundaries of the applicable law:

> When the police have lawfully impounded an automobile in carrying out their community caretaking function, they are permitted to inventory its contents. Such warrantless inventory searches, when conducted in compliance with standard and established police procedures and not as a pretext for criminal investigation, do not offend Fourth Amendment strictures against unreasonable searches and seizures. *Colorado v. Bertine,* 479 U.S. 367, 374, 107 S.Ct. 738, 742, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman,* 428 U.S. 364, 37475, 96 S.Ct. 3092, 3099-100, 49 L.Ed.2d 1000 (1976); *State v. Smith,* 120 Idaho 77, 80-81, 813 P.2d 888, 891 (1991). An inventory following impoundment is a reasonable and legitimate means to safeguard the owner's property, to prevent claims against the police for lost or stolen property, and to protect the police and others from dangerous instrumentalities that may be inside the vehicle.

**ORDER  8**

> *Bertine,* 479 U.S. at 374, 107 S.Ct. at 742; *Opperman,* 428 U.S. at 372, 96 S.Ct. at 3098-99; *Smith,* 120 Idaho at 80, 813 P.2d at 891. However, the impoundment itself must be lawful. An impoundment of a vehicle constitutes a seizure and is thus subject to the limitations of the Fourth Amendment.

*State v. Weaver*, 900 P.2d 196, 198-99 (Idaho 1995).

For the qualified immunity analysis, the Court first asks whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the [defendant's] conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. The most important factors in this particular inquiry are that, prior to the impoundment and inventory search, the officers knew that (1) Plaintiff denied any knowledge or ownership of the van,[2] (2) the van was not, in fact, registered to Plaintiff, and (3) the registered owner of the van told them that Plaintiff had purchased and obtained possession of the van earlier that month, (4) the keys were in the ignition of the van, (5) the van was in the parking lot of a store open to the public, and (6) Plaintiff had no current driver's license.

Under these circumstances, it was unclear whether Plaintiff intended to abandon the van. The van was a threat to public safety, because the keys were in the ignition, and a child or unlicensed driver could have commandeered the van. Officers decided to have the registered owner of the vehicle tow it to the registered owner's private property. The registered owner of the van, Evergreen Towing, implicitly consented to the towing and impoundment by actually performing the towing and impoundment. The officers

---

[2]*See Plaintiff's Response to Motion for Summary Judgment* (Docket No. 65).

**ORDER 9**

inventoried the van pursuant to the impoundment.

Under these facts, the Court finds that no Fourth Amendment violation has been alleged. Plaintiff cannot have it both ways: he cannot deny that he owned, possessed, or drove the van *and* assert a privacy interest in it. For these reasons, Plaintiff's claim fails the first part of the *Saucier* test and is subject to summary judgment.

In similar cases, in the context of suppression of evidence in a criminal case, several courts have come to the same conclusion. In *State of Louisiana v. Butler*, 631 So.2d 22 (2d Cir. 1994), the court determined that impoundment was reasonable where the defendant had fled the scene of a traffic stop and abandoned his car in the middle of the street, where cash was visible to the public through the window of the car, and where the car contained expired temporary registration, documentary evidence of ownership in a name other than defendant's, and expired insurance information in yet another person's name. *Id*. at 26. In *Madison v. United States*, 512 A.2d 279 (D.C. Ct. App. 1986), the court similarly denied a motion to suppress evidence found after impoundment, where the car was impounded after the driver could not produce a license or registration, and where the license tags were expired and the name on the car license did not match the name on the car registration. *Id*. at 280.[3]

---

[3]The Court finds the facts of this case distinguishable from *Gordon v. Noble*, 712 P.2d 749 (Idaho Ct. App. 1986), where the facts of impoundment presented a jury question under the Idaho Tort Claims Act, because Gordon asserted that the vehicles were his and requested that Officer Noble release the vehicles to Gordon's "agent" rather than impound them. *Id*. at 751. In Plaintiff's case, Plaintiff denied all knowledge and ownership of the van. Therefore, the Court finds that the failure to show a privacy interest in the vehicle at the time the officers decided to impound the vehicle prevents this case from posing jury questions of whether officers

**ORDER  10**

Likewise, it has been found reasonable for officers to have a vehicle towed to protect it from being stolen. *See Hallstrom v. City of Garden City*, 991 F.2d 1473 (9th Cir. 1993) (it is not unreasonable for the arresting officers to protect an arrestee's car from vandalism or theft by having it towed); *United States v. Johnson*, 734 F.2d 503 (10th Cir. 1984) (towing a car from the parking lot of a lounge was reasonable to protect it from vandalism).

Therefore, in light of Plaintiff's denial of anything to do with the vehicle, its questionable ownership, its lack of current legal registration, and its potential threat to public safety, the officers' decision to impound the van with its legal record owner was reasonable, and, therefore, searching and photographing the van as a part of the inventory process did not violate the Fourth Amendment. As a result, this claim is subject to summary judgment.

2. Claim of Covering Up Civil Rights Violations

Plaintiff asserts that Defendants Mattingley and Givens covered up a Fourth Amendment search and seizure violation regarding the photographs of the van if any facts exist which support such a claim. However, because the Court has found no Fourth Amendment violations, this claim is subject to summary judgment.

3. Deprivation of Personal Property Claims

The Court earlier indicated that it would not interfere with the state court's order

---

impounded the vehicle in a manner contrary to I.C. § 49-692 or department policy and had an improper motive for impoundment. The Court notes that Gordon was overruled on state law grounds not applicable here by R*ansom v. City of Garden City*, 743 P.2d 70 (Idaho 1987).

**ORDER 11**

compelling Defendants to return Plaintiff's impounded tools, but that Plaintiff could request damages for the time period in which he was denied the tools.  The Court now determines whether Plaintiff's claim for damages or return of his tools is subject to summary judgment.

As described above, Plaintiff may not proceed under a Fourth Amendment theory because he has not sufficiently shown a privacy interest in the personal property items in the unclaimed van at the time of the impoundment and inventory of the van.  At that time, he denied all interest in and ownership of the van (which would include its contents).

Nor may Plaintiff proceed on his loss of personal property claim under a Fourteenth Amendment theory.  The negligent or intentional unauthorized deprivation of property by state officials does not state a cognizable due process cause of action under § 1983 if the plaintiff has an adequate state post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986); *Taylor v. Knapp*, 871 F.2d 803, 805-06 (9th Cir. 1989), *cert. denied*, 493 U.S. 868 (1989).  Here, the Idaho Tort Claims Act, I.C. § 6-901, *et seq.*, provides an adequate remedy if government officials have deprived Plaintiff of any personal property.

However, the facts do not support a state deprivation of personal property claim against Defendants.  The van was released immediately into the custody of its registered owner, Evergreen Towing.  *See* Docket No. 1, Exhibit (police report indicating van was released to Evergreen Towing); Docket No. 65, Plaintiff's Response to Motion for

**ORDER  12**

Summary Judgment, Exhibit K (release dated May 10, 2002, showing Evergreen Towing as the registered owner and the signature of Daniel Smith, owner of Evergreen Towing). If Plaintiff has any claim for loss of personal property, it is against Evergreen Towing. The Court notes that Judge Debra Heise's "Order Granting Amended Motion to Return Seized Property" in Plaintiff's state criminal case ordered the Sheriff's Office to produce "any items . . . *that are in the possession* of the Bonner County Sheriff's Office." *See* Docket No. 42, Plaintiff's Supplemental Response to Motion for Summary Judgment, Exhibits. This Order is not contrary to Judge Heise's order because Plaintiff has not shown that any items were actually in the possession of the Sheriff's Office. For these reasons, the deprivation of personal property claims are subject to summary judgment.

## III.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Renewed Motion for Summary Judgment (Docket No. 61) is GRANTED. Plaintiff's entire case is dismissed with prejudice.



DATED: **May 23, 2005**

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**ORDER  13**